Mr. Justice Cox delivered
the opinion of the Court:
In the case of United States of America, to the use of Henry S. Davis, vs. Nathan C. Draper, John Henderson, Benjamin F. Lloyd and Amasa T. C. Dodge, it appears that in Equity Cause No. 5425, in which Draper was complainant and Davis and others were defendants, a decree being-entered in favor of the defendants, the complainant appealed to the Court in General Te'rm and executed an. appeal bond to the United States of America, in the sum of $2,000 upon condition that if the said appellants would prosecute such appeal to effect, or pay the costs of said appeal, and all damages which might accrue to the parties defendant in the said cause by reason of the staying of proceedings under that decree, then the said obligation should be void, otherwise it should remain in full force and virtue. Suit was brought upon that bond. Judgment- was entered by default against some of the parties and one of the defendants, Henderson, a surety, appeared and pleaded. He filed several pleas. There 'are two which it is necessary to notice. The second is:
“Said United States of America has not and never had any right, title, or interest in said bond, and never was the owner of the bond sued on, and is not and never was in any manner whatever interested or concerned in said bond or in said Equity Cause No. 5425, wdierein said Nathan C. Draper and Anthony Hyde and others were parties, and the said United States of America 'was not a party to said equity cause.”
The third plea is :
“ That said bond was taken and approved by Mr. Justice A. Wylie, different in form and character from that prescribed by law, was under color of his office (i. e., justice of *88 said court) obtained from said Nathan C. Draper and said defendants contrary to law, without any consideration whatever, and without any warrant' or authority of law whatever, and said justice had no power or authority to accept or approve said bond, and the same is and always was void.”
The plaintiff demurred to the pleas. It is not necessary to consider whether there 'was anything strictly incorrect or erroneous in the form of the pleas because the demurrer would cut back to the declaration, and the question is a general one as to whether suit can be maintained on that form of bond. There can be no doubt that the settled practice in the State of Maryland and in this District is, for the appellant in an equity suit, or the plaintiff in error in a law suit, to execute a writ of error or appeal bond to his adversary. That is the form given in both the standard works on practice in Maryland, and that has been, as a rule, the form used here. It appears in this case that the bond was probably prepared by counsel for the defendant (Mr. Meloy), because we find a similar bond prepared by him in another case. In two other cases we find similar bonds were executed and prepared by counsel who is no longer resident here and of whom we have no recollection. Apart from that, the usual form of the bond is in conformity with the the practice of Maryland, i. e., to the adversary and not to the United States. That also is the rule in the Federal Courts. There was a case in the Supreme Court, Davenport vs. Fletcher, 16 Iiow,, where a writ of error was dismissed upon the ground, among others, that the writ of error bond was given to a party not on the record, but to a person who had purchased the judgment rendered below from the plaintiff. So that it may be laid down as very plain* that it, at least, was an irregularity to execute a bond to the United States. This is not in form executed to the United States for the use of anybody else, but directly to the United States, upon condition that if the appellant shall prosecute his appeal in this case with effect — to which the United *89 States was not a party at all — then the bond shall be void. The question remaining is, whether that bond is available at all or is merely a nullity. AVe have been referred to a series of decisions relating tq official bonds, rendered by the Supreme Court of the United States, growing out of the circumstance that in may cases where parties have been appointed to office, they have executed bonds varying in form from the bonds prescribed by the statuses, and in which the Supreme Court has held that, notwithstanding that, the bonds should be treated as voluntary common law bonds and sustained as such ; and it has been sought to apply the rule thus established to the present case. There are, however, some differences between those cases and the present. In the first place, in those cases, the bonds were executed to the right party — the party in interest — the United States, and its only defect ivas in the mere form of the obligation. In this case, the bond ivas executed to an entire stranger to the suit in which it was given- — a party who had no interest in the matter whatever — that is, to the United States of America. A somewhat similar question was presented in the case of Jackson vs. Simonton, 4 Cranch. There, a man had been appointed marshal and instead of executing his bond to the United States, he executed it to Andrew Jackson and his successors in office. Suit was brought in Andrew Jackson’s name, and the question was raised whether this might not be taken as a voluntary bond, as it ivas called. The court said:
“ It appears upon its face to be taken by the President of the United States, colore officii, for it is made payable to him and to his successors in office.’ It is not a personal contract, and must have been intended for the United States when made. But the President had no authority from the United States to take such a bond or to enter into any such contract on the part of the United States with the marshal. The judge of the district was the only person designated by the Act of Congress to take the bond and judge of the *90 sufficiency of the security; and he could only take it ‘ in the name of the United States.’ Noi’ could the Secretary of State accept any other bond than the one given and approved according to the statutes,” &c.
There is another and later case — the case of the United States against Jessup- — -reported in 107 United States, where certain stamps were issued to a trader,- under authority of Internal Revenue Acts, who executed a bond to the United States when the law prescribed that it should be given to the Treasurer. The court held that the bond was good because the Treasurer was an officer of the United States and there was really no difference.
But another very important distinction is this: In the cases referred to, in the Supreme Court, it was held that it was incident to the power of appointment, that the proper department should require from the appointee a contract, with security, for the due execution of his duties, and that they might be required of him without authority of any statute at all; that it was one of the inherent powers of government, through its proper officers, to take such obligations as that. If there had been no act of Congress on the subject, such a bond would have been good, and when an act was passed requiring an officer to execute a bond in a certain form, it -was directory, not mandatory, not exclusive of any other form of bond, unless the act, in its very terms, or by necessary implication, made any other form void. This left it open to the department to accept a bond in a different form from that required by the statute, and it could have been maintained as a good bond ; provided it was executed voluntarily by the appointee. But even in that case — even in the case of a bond differing in form from that required by statute, if it were extorted by color of office, it was held, in the case of the United States against Tingey, that the bond was void; therefore it must be a voluntary bond, and it must be such a one that a party might have executed and the department might, *91 have required of him in virtue of its inherent powers to-protect the United States in conferring offices or giving privileges or licenses under the Revenue Acts, &c. Now,, the difference between that class of cases and the present is, that neither the common law nor any statute allows a contract to be entered into between any individual and the United States for the indemnity of a private litigant. In other words, nobody can contract with the United States to secure his adversary in a law suit. No law authorizes it — no common law authorizes it and no statute. Such a bond, therefore, is taken without a shadow of authority from any law. It is taken by the court without authority,, and therefore must be treated as a mere nullity. The-United States has no sort of interest in pending litigationsbetween private individuals. No statute authorizes the-United States to exact a bond of that sort or a judge to-take it or to approve it, and in that respect the cases cited from the Supreme Court differ entirely from the present-one. Under certain acts of Assembly of Maryland, in force-here, the bonds of executors, administrators, guardians and chancery trustees are given to the Government and can be sued on for the use of persons interested. But these are all public officers, and this exceptional legislation only proves the rule. There is another circumstance which distinguishes-the Supreme Court cases from this case, and that is, that in all the cases cited, the bonds were treated as voluntaiy bonds. A man was appointed to office and it was optional with him whether he -would take the office or not. If he chose to-take it, it was reasonable that he should give security for the due performance of the duties required of him. A man does not stand in that position where he is the appellant-from a decree. He is compelled to give a bond or his property is subject to execution. In the one case, he gives a bond for the purpose of acquiring certain privileges, and in the other case, he gives a bond to save himself from certain-loss. This can hardly, therefore, be called a voluntary *92 bond, and consequently we have not been referred to any case nor have we been able to find any, in which the rule as to voluntary bonds, good as common law bonds, has been •applied to judicial proceedings. The nearest approach to it — and even that is merely in the form of a question — is the case of the Omaha Hotel Company vs. Kountze, 107 United States, 378, where a suit was brought upon an appeal bond containing other conditions than those prescribed by law. It contained some prescribed by law and others which were not. In that case, the court held the bond was void as respects those conditions which were not authorized to be inserted in the bond, but good for the rest, and the court, in the conclusion of the opinion, said :
“ We are aware, as shown by the citations on the plaintiff’s brief, that official bonds, and bonds given to the Chrv■ernment for the purpose of enjoying certain offices or privileges, and perhaps some others subject to like reason, have often been sustained as contracts at common law, voluntarily entered into, where they have not conformed to the statutory requirements, and would have been insufficient and ineffectual for the purposes of a recovery, if those requirements had been applied to them. We do not think that this case fairly belongs to that class of cases. Had the bond now under consideration -so entirely departed and varied from the statute that it could not have been sustained with the effect of an ordinary appeal bond, the question would then more properly have arisen, whether, on the one hand, it might not be sustained as a bond at common law, •or on the other, declared utterty void.” The court merely suggested in the case which was before them, that the question might have been raised whether this was a voluntary bond or was absolutely void. So, their suggestion does not favor one view more than the other. We have always held in this court, in every case that has come before us — every action on a bond that was not authorized by law to be given in the course of judicial proceedings — that they were void. *93 In the case of the Insurance Company vs. Hosmer, which was an action commenced before a justice of the peace to-recover possession of certain real estate — a landlord and tenant case — the proceedings were removed by writ-of certiorari to the Circuit Court. The justice below proposed’to-certify it to the court above. Upon the suggestion of the-landlord that it would be injurious to his interest to allow the tenant to remain in the possession of the property until the decision by the General Term without any security for payment of the rent, the tenant -was required to give bond, and the court held that, inasmuch as there was no law providing for the giving of such a bond, it was simply void and no recovery could be had. So in the Prott Case, where-a debtor was arrested charged with fraud, and was released on giving a recognizance. There was no law providing for the giving of any such bond, and the court held it to be void. In the case of Stewart vs. Lapsley, 7 La. Ann., 641,. cited in- argument, the broad proposition is stated in so-many words, that the law as to voluntary bonds does not apply to judicial proceedings. That is, perhaps, going a little farther than the case called for. It was a case where-a sheriff took an indemnity bond from a judgment creditor-to save him harmless in executing afi.fa. There the court held that the law as to voluntary bonds does not apply to-judicial proceedings.
Another question was raised in the case, as to whether the-name of the United States could be. used for bringing this: suit at all. It seems to be pretty well settled that the name-of the United States cannot be used as plaintiff, unless the official representative of the Government appears in the-case. In this case, the District Attorney did sign his name-to the declaration, evidently to accommodate the parties and obviate this objection;- but it is apparent that the United States did not have a shadow of interest in the case, and we doubt very much whether- the District Attorney had, authority to appear- in such a. case.. In: the case of the: *94 United States ex rel. West et al. vs. Doughty, 7 Blatch., 424, where a suit was brought in the name of the United States at the relation of-certain persons, and where the District Attorney did not appear, Judge Blatchford says:
“ This court can recognize the United States as a plaintiff on the record only when the record shows that the United States appear as plaintiff by the District Attorney of this District. Upon this bill, if there are any plaintiffs, the United States are such plaintiffs. The relators are not plaintiffs. The bill must be maintained and is sought to be maintained, if at all, solely on the right of the United States themselves as plaintiffs to bring it,” &c.
The United States could not have brought this suit. They have no interest in it. The United States could not have brought it on their own account, and it is at least doubtful whether the District Attorney would have the right to appear as the representative of the Government. We do not find it uecessaiy to decide that, because we think this bond is one that the law did not authorize under any circumstances, and is simply void ; and, therefore, on the demurrer, judgment must be given for the defendant.

The judgment of the court beloiu is accordingly affirmed.